IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GENTAG, INC. and ALTIVERA, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: 1:23-cv-310 ) ) **Jury Trial Demanded** |
| ABBOTT LABORATORIES, INC. and ABBOTT DIABETES CARE, LLC, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Gentag, Inc. and Altivera, LLC ("Gentag" or "Plaintiffs") allege the following claims against Defendants Abbott Laboratories, Inc. and Abbott Diabetes Care, LLC ("Abbott" or "Defendants"):

## INTRODUCTION

1. Over twenty years ago, Gentag was founded as a visionary technology development company by Dr. John Peeters, an expert on biomarkers, sensors, and nanotechnologies. Since its founding, Gentag has leveraged its advanced knowledge in biology, chemistry, microelectronics, and artificial intelligence to address consumer safety and health concerns. One of Gentag's key innovations has been the development of disposable wireless sensors, a technology that has revolutionized diagnostics, proactive medicine, nutrition, and the everyday lives of consumers worldwide. Gentag's ground-breaking sensor technology includes cell phone-based sensors for instant diagnostic tests.

2. Gentag's patent portfolio—which includes 66 patents issued in the United States, Europe, and Asia—covers several state-of-the-art technologies, including cell phone-based sensors and sensors for instant diagnostic tests.

3.  Dating back to 2006 (years before Abbott introduced its infringing products), Dr. Peeters met with Abbott representatives—under a non-disclosure agreement ("NDA")—to discuss the possibility of Abbott taking a license to Gentag's patent portfolio. Dr. Peeters described to Abbott in detail his inventions relating to the use of skin patch sensors that transmit diagnostic information to a cell phone, including, notably, the ability to transform any cell phone into a glucometer. He also specifically described the application of this technology to monitor insulin levels in diabetics. In light of Abbott's interest in this technology, Dr. Peeters provided Abbott samples of his NFC ("near-field communication") devices and valuable insight into this emerging technology.

4.  In 2006, Dr. Peeters also told Abbott that he had filed for patent protection on this technology and identified for Abbott the PCT application from which the patent in suit later issued. Dr. Peeters attempted to engage Abbott in licensing discussions several times after 2006 and put Abbott on notice of the patent in suit shortly after it issued. While Abbott admitted that "this area is of interest to us" after Dr. Peeters disclosed the details of his invention, Abbott thereafter cut off further discussions with Dr. Peeters and never sought a license to any Gentag patents despite Abbott's knowledge of the patent in suit.

5.  Nevertheless, after meeting with Dr. Peeters and notice that the patent in suit had issued, Abbott began manufacturing and selling its FreeStyle Libre products, which include skin-patch sensors that transmit diagnostic data to a cellular phone or NFC reader that serves as a glucometer. Abbott has done so without a license or permission from Gentag.

6.  The NFC sensor platform that Dr. Peeters disclosed to Abbott gave Abbott an early and distinct edge in the market over its competitors and put them in a dominant position in the marketplace. The accused FreeStyle Libre products, which include the original FreeStyle

Libre, FreeStyle Libre 2 and FreeStyle Libre 3, have been a huge commercial success generating billions of dollars in revenue. Abbott touts the FreeStyle Libre as the "the #1 sensor-based glucose monitoring system used worldwide." In addition, the FreeStyle Libre products—using the technology invented by Dr. Peeters and misappropriated by Abbott—have won numerous awards, including being named as the best medical technology of the last 50 years by the Galien Foundation, an award "regarded as the equivalent of the Nobel Prize for biopharmaceutical and medical technology research." https://abbott.mediaroom.com/2022-10-28-Abbotts-FreeStyle-Libre-R-is-Named-Best-Medical-Technology-in-Last-50-Years-by-the-Galien-Foundation.

## THE PARTIES

7. Plaintiff Gentag, Inc. is a Delaware corporation, with its principal place of business located at 11403 Cronhill Drive, Suite B, Owings Mills, Maryland 21117.

8. Plaintiff Altivera, LLC ("Altivera") is a Maryland corporation, with its principal place of business located at 11403 Cronhill Drive, Suite B, Owings Mills, Maryland 21117.

9. Many of Gentag's patents, including the patent in suit, are assigned to its IP holding company, Altivera. Altivera is owned by the shareholders of Gentag. Hereinafter, "Gentag" refers collectively to Gentag, Inc. and Altivera, LLC.

10. Defendant Abbott Laboratories, Inc. ("Abbott Labs") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 100 Abbott Park Road, Abbott Park, Illinois 60064.

11. Defendant Abbott Diabetes Care, LLC ("ADC") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Alameda, California. Hereinafter, "Abbott" refers collectively to Abbott Labs and ADC.

12. Defendants make, sell, offer for sale in the United States, and/or import into the United States, health care products, including but not limited to continuous glucose-monitoring products.

## JURISDICTION AND VENUE

13. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over Defendant Abbott Labs because Abbott Labs is headquartered in this district, engages in business in this district, and has placed infringing products into the stream of commerce by shipping products into this district (and/or knowing that the products would be shipped into this judicial district), and such infringing products have been sold and used in this district.

15. This Court has personal jurisdiction over Defendant ADC because ADC has offices in this district, engages in business in this district, manufacture products in this district, and has placed infringing products into the stream of commerce by shipping products into this district (and/or knowing that the products would be shipped into this judicial district), and such infringing products have been sold and used in this district.

16. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b), because, among other reasons, Defendants are subject to personal jurisdiction in this district, have offices in this district, engage in business in this district, manufacture products in this district, have placed infringing products into the stream of commerce by shipping products into this district (and/or knowing that the products would be shipped into this judicial district), and have a regular and established place of business, including physical business and manufacturing facilities, in

this district, including but not limited to physical facilities in Abbott Park, Lake Forest, Des Plaines, and Buffalo Grove, Illinois.

## FACTUAL BACKGROUND

17. Dr. John Peeters is the founder and Chief Executive Officer of Gentag, Inc. Dr. Peeters is an expert on biomarkers, sensors, and nanotechnologies. Dr. Peeters obtained a doctorate in applied biology from Cambridge University in the UK. He also holds a master's degree in genetics and a bachelor's honors degree in biology. Dr. Peeters predicted and patented several key technologies well before their time and holds numerous issued U.S. and international patents, including patents relating to NFC technologies and the use of diagnostic patches with cell phones.

18. In the early 2000s, Dr. Peeters conceived of the integration of NFC technology into cell phones and thereafter the use of NFC diagnostic patches for fever, diabetes and other health conditions, lateral flow immunoassays with NFC, the closed loop diabetes system, and advanced diagnostics (lab-on-a-chip) for cell phones.

19. On January 27, 2004, Dr. Peeters filed a provisional patent application on NFC diagnostic patches for cell phones, followed by PCT Application No. PCT/US05/02171 and U.S. Pat. App. No. 10/530,901, which later became U.S. Patent No. 7,969,307, entitled "Diagnostic radio frequency identification sensors and applications thereof" ("the '307 patent"). Dr. Peeters is the named inventor on the '307 patent.

20. Around this same time (January 2004), Abbott acquired TheraSense Inc., a diabetes test-maker, for $1.2 billion. At that time, TheraSense's "FreeStyle" blood glucose self-monitoring system was a traditional glucometer (with test strips and finger pricks). Abbott took

over the "FreeStyle" name and actively entered the diabetes market by selling the FreeStyle devices.

21. In early 2006, Dr. Peeters was introduced to Steve Reese by a mutual colleague. Mr. Reese was Director of Business Development with Abbott Diabetes Care. On March 28, 2006, Dr. Peeters sent Mr. Reese a summary presentation entitled "Linking Cell Phones with Diagnostic Sensors." On July 28, 2006, Mr. Reese emailed Dr. Peeters about a potential meeting, asking questions specifically about the use of cell phones and glucose monitoring.

22. Excited about the promising nature of his inventions, Abbott and Dr. Peeters agreed to meet to discuss Dr. Peeters' ideas for the use of diagnostic patches in diabetes care. In September 2006, prior to any meeting, Gentag and Abbott entered into an NDA. The NDA described the subject of Gentag's disclosures as: "Diagnostic applications of RFID-enabled cell phones including wireless immunoassays, 'smart' skin patches and diabetes. RFID passive sensors, including temperature." Abbott described the information provided under the NDA as "Business information and strategies."

23. After entering into the NDA, Dr. Peeters had a face-to face meeting with Mr. Reese wherein Dr. Peeters shared the details of his invention and his vision for future applications, particularly for use in monitoring glucose levels in diabetics.

24. In November of 2006, Mr. Reese indicated that he had sent the information received from Gentag to the Abbott Diabetes Care group and would get back to Dr. Peeters. But Mr. Reese never contacted Peeters.

25. In October of 2007, Gentag again contacted Abbott by email to discuss leveraging Abbott's FreeStyle Navigator (a traditional glucometer) with Gentag's patented revolutionary concept of using a cell phone as a universal reader for disposable wireless sensors. Gentag again

noted that it held key patents that cover "RFID Diagnostic Smart Skin Patch Technology," including an application for "RFID glucose-monitoring skin patch."

26. Larry Huffman, who, upon information and belief, was Vice President of International Development at Abbott Labs, initially indicated that the technology was an area of interest to Abbott. Then, in September of 2008, Mr. Huffman reversed course, indicating that Abbott was not interested in moving forward because Abbott did not want to "eat their own lunch."

27. In February of 2009, Gentag sent a follow-up email to Mr. Reese and Graham Davis (a prolific IP creator for Abbott) with an updated presentation on Gentag's patented technology. Abbott did not respond.

28. In the interim, in March of 2008, the FDA approved Abbott's FreeStyle Navigator, a CGM (continuous glucose monitoring) device featuring an on-body sensor and transmitter and an off-body receiver. Abbott eventually discontinued its FreeStyle Navigator and indicated that it was working on next-generation technology in 2011. https://diatribe.org/abbott-announces-it-will-permanently-discontinue-freestyle-navigator-cgm-us.

29. In 2014, Abbott received a CE Mark for its "FreeStyle Libre" system and released its first wireless diabetes patches in Europe. The initial FreeStyle Libre reader was NFC-based and was combined with disposable wireless diabetes patches, eliminating the need for finger-prick calibration. Abbott gradually started opening the technology to NFC cell phones, starting first in Europe.

30. In November of 2015, Gentag entered into another NDA with Abbott, this time with Abbott Products Operations AG (Switzerland) and met with the Swiss Abbott group in Basel, Switzerland the following month. On December 11, 2015, Dr. Peeters sent a Gentag

presentation to Abbott Products Operations AG, which included a description of the '307 patent. At that time, the Swiss Abbott group indicated that they had "passed on the information on your Diabetes products to our Abbott Diabetes Care Colleagues." Abbott Products Operations AG indicated that they were "mightily impressed with the technology" and that there are "a few opportunities which are of interest to us." While Abbott expressed interest in Gentag's IP for use with an NFC fever patch, Gentag received no further communications at that time from Abbott Labs or ADC.

31. In July of 2016, Dr. Peeters received an unsolicited e-mail from Richard Benson inquiring about Gentag's licensing status with Abbott, stating that the Abbott technology is based on "RFID used to secure the sensor activation and link by serial number and NFC is used to send the data." The e-mail stated that "my understanding from an (Abbott) employee is that they discussed Gentag during development." Upon information and belief, Mr. Benson previously worked for ADC from 2003-2011.

32. In September of 2017, Dr. Peeters emailed Paul Schroeder of ADC with a description of Gentag's patents and a presentation on his invention's application to glucose monitoring. There was no response.

33. On September 27, 2017, Abbott announced that the FDA had approved "the FreeStyle® Libre Flash Glucose Monitoring System as a replacement for blood glucose monitoring (BGM) for adults with diabetes in the U.S. This revolutionary new glucose sensing technology eliminates the need for routine finger sticks and is the only personal continuous glucose monitor (CGM) that does not require finger stick calibration." https://abbott.mediaroom.com/2017-09-27-No-More-Routine-Finger-Sticks-1-for-Americans-with-Diabetes-Abbott-s-FreeStyle-R-Libre-Approved-in-the-U-S. This is precisely the system

Dr. Peeters disclosed to Abbott beginning in 2006 and described and claimed in Gentag's '307 patent. Abbott was aware that Gentag was seeking patent protection on this technology since the first discussions in 2006 and was on notice of the '307 patent since at least as early as December of 2015.

34. Again in 2019, Dr. Peeters emailed Paul Schroeder with an update on the skin patches and Gentag's patents. Again, there was no response.

35. In March 2020, Gentag sent the CEO of Abbott, Miles White, a letter via Federal Express alerting him to the opportunity of the Gentag IP for Covid-19 and for diabetes, as well as Gentag's patent coverage in these areas. Matt Cienkus was appointed to review the Gentag portfolio for Abbott and contacted Gentag in April 2020. In July 2020, Mr. Cienkus stated (about diabetes) that "we are going to pass on the opportunity at this time."

36. On or about June 15, 2020, Abbott received FDA approval for Freestyle Libre 2 iCGM (for integration with other diabetes management devices). https://abbott.mediaroom.com/2020-06-15-Abbotts-FreeStyle-R-Libre-2-iCGM-Cleared-in-U-S-for-Adults-and-Children-with-Diabetes-Achieving-Highest-Level-of-Accuracy-and-Performance-Standards.

37. On or about June 1, 2022, Abbott received FDA approval for its FreeStyle Libre 3 with "continuous glucose monitor (CGM) with readings sent directly to a smartphone every minute." https://abbott.mediaroom.com/2022-05-31-Abbotts-FreeStyle-Libre-R-3-Receives-U-S-FDA-Clearance-Features-Worlds-Smallest,-Thinnest-and-Most-Accurate-14-Day-Glucose-Sensor.

38. On May 10, 2022, Gentag's counsel sent a letter to Abbott Labs' Executive Vice President, General Counsel & Secretary notifying Abbott that its FreeStyle Libre products, which

include skin-patch sensors that transmit diagnostic data to a cellular phone or NFC reader that serves as a glucometer, are covered by the '307 patent. A chart mapping a representative claim of the '307 patent to these products was included in this letter.

39. Despite the obvious application of Gentag's patents to the FreeStyle Libre products, Abbott never took a license to any patents and began using the invention claimed in the '307 patent without Gentag's permission. Abbott has benefited greatly from its unlicensed use of Gentag's patented innovations. Abbott touts its FreeStyle Libre products as "the #1 sensor-based glucose monitoring system used in the U.S. and worldwide." https://www.abbott.com/freestyle-libre-2-continuous-glucose-monitor-cgm.html#:~:text=As%20the%20%231%20sensor%2Dbased,million%20people%20across%2050%20countries.&text=The%20System%20must%20not%20be,loop%20and%20insulin%20suspend%20systems. In 2021, FreeStyle Libre sales totaled $3.7 billion, which reflected a 36.8 percent increase over 2020. https://www.abbottinvestor.com/node/34451/html. FreeStyle Libre sales totaled $2.1 billion in just the first six months of 2022. https://www.abbottinvestor.com/node/35096/html.

40. In addition, Abbot's FreeStyle Libre products—using the technology invented by Dr. Peeters and misappropriated by Abbott—have won numerous awards, including being named as the best medical technology of the last 50 years by the Galien Foundation, an award "regarded as the equivalent of the Nobel Prize for biopharmaceutical and medical technology research." https://abbott.mediaroom.com/2022-10-28-Abbotts-FreeStyle-Libre-R-is-Named-Best-Medical-Technology-in-Last-50-Years-by-the-Galien-Foundation.

## COUNT I

### Patent Infringement of U.S. Patent No. 7,969,307

41. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as though fully set forth herein.

42. Plaintiffs are the owner by assignment of U.S. Patent No. 7,969,307, which was duly and lawfully issued by the United States Patent and Trademark Office on June 28, 2011, titled "Diagnostic radio frequency identification sensors and applications thereof" ("the '307 patent"). A true and correct copy of the '307 patent is attached as **Exhibit A** and made a part hereof.

43. Defendants have had general knowledge of Gentag's patent portfolio since at least 2006, and specific knowledge of the '307 patent and its infringement of the '307 patent since at least as early as December of 2015.

44. Defendants have at no time been licensed under the '307 patent.

45. Defendants have directly infringed, and are currently directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '307 patent, in violation of 35 U.S.C. § 271 *et seq.*, by making, using, selling, offering to sell in the United States, and/or importing into the United States infringing products, including without limitation Abbott's FreeStyle Libre products.

46. By way of example, Abbott's FreeStyle Libre products infringe at least claims 1, 2, 3, 5, 9, and 10 of the '307 patent, as shown in the claim chart provided herewith as **Exhibit B** (incorporated herein by reference).

47. Abbott induces infringement of the '307 patent. Abbott has had knowledge of the '307 patent since at least December of 2015. Abbott instructs and induces its customers to use the accused products (e.g., the FreeStyle Libre products) in a manner that directly infringes the

'307 patent (as discussed above). Infringement of the '307 patent can be found through use of the accused products. Abbott has known or should have known that its acts would cause its customers to infringe the '307 patent.

48. Abbott contributorily infringes the '307 patent. Abbott has had knowledge of the '307 patent since at least December of 2015. Abbott has sold or supplied components (e.g., the FreeStyle Libre products) that form a significant part of the invention described in the '307 patent. Abbott's customers infringed the '307 patent through use of the components. Abbott knew the components were especially made or adapted for a use that would infringe the '307 patent. The components were not commonly available items or products with substantial non-infringing uses.

49. Abbott's infringement of the '307 patent has been willful at all times that it has sold FreeStyle Libre products in the United States.

50. As a direct and proximate result of Defendants' willful infringement of the '307 patent, Plaintiffs have been and will continue to be irreparably damaged and deprived of their rights in the '307 patent in amounts not yet determined, and for which Plaintiffs are entitled to relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment that:

A. Defendants have infringed one or more claims of the '307 patent, and such infringement has been willful;

B. Defendants, their officers, directors, employees, agents, subsidiaries, licensees, servants, successors and assigns, and any and all persons acting in privity or in concert or participation with Defendants, be enjoined from further infringement under 35 U.S.C. § 283;

C. Plaintiffs be awarded all damages adequate to compensate Plaintiffs for Defendants' willful infringement, and such damages be trebled under 35 U.S.C. § 284 and awarded to Plaintiffs, with interest;

D. This case be adjudged an exceptional case under 35 U.S.C. § 285, and Plaintiffs be awarded attorneys' fees, costs, and all expenses incurred in this action;

E. Plaintiffs be awarded all actual and compensatory damages; and

F. Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable by jury.

Dated: January 19, 2023        PERKINS COIE LLP

                               By    */s/ Christopher G. Hanewicz*

                                       Christopher G. Hanewicz
                                       CHanewicz@perkinscoie.com
                                       Michelle M. Kemp
                                       MKemp@perkinscoie.com
                                       Rodger K. Carreyn
                                       RCarreyn@perkinscoie.com
                                       Gabrielle E. Bina
                                       GBina@perkinscoie.com
                                       33 East Main Street, Suite 201
                                       Madison, WI 53703
                                       (608) 663-7460 (Phone)
                                       (608) 663-7499 (Facsimile)

                                       Mark Thomas Smith
                                       MarkSmith@perkinscoie.com
                                       110 North Wacker Drive, Suite 3400
                                       Chicago, Illinois 60606-1511
                                       (312) 324-8400 (Phone)

                                       *Attorneys for Plaintiffs Gentag, Inc. and Altivera, LLC*